# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

November 7, 2007

Frank Holahan
McElroy, Deutsch, Mulvaney & Carpenter, LLC
40 West Ridgewood Avenue
Ridgewood, NJ 07450

    (*Attorney for Plaintiff*)

Barry Alan Kozyra
Kozyra & Hartz, LLC
75 Eisenhower Parkway
Roseland, NJ 07068-1777

    (*Attorney for Defendant*)

       RE:    **World Finer Foods, Inc., et al. v. Archway Cookies, LLC.**
               **<u>Civ. No. 03-1277 (WJM)</u>**

Dear Counsel:

    Defendant Archway Cookies, LLC ("Parmalat") brings its second motion for summary judgment, seeking dismissal of claims remaining after this Court disposed of its first motion. Parmalat argues that these claims rest upon the inadmissible expert testimony of two of Plaintiffs' witnesses, John Roberts and Chris Campos.  Parmalat further argues that without this testimony, Plaintiffs have insufficient evidence to support their claims on summary judgment. This Court disagrees and finds that Plaintiffs have indeed put forth sufficient evidence for their claims to survive summary judgment.  Accordingly, Parmalat's Motion is **DENIED**.

## FACTS AND PROCEEDINGS

The facts of this case have been set forth at length in this Court's Opinion disposing of Parmalat's first motion for summary judgment. (Summ. J. Op. 1–6.) This Letter Opinion will summarize only those facts necessary for the disposition of this Motion.

At the heart of this dispute lies a contract. In December 1998 Parmalat contracted with World Finer Foods, Inc. ("WFF") to be WFF's distributor in the northeast United States of certain cookies that WFF imported from Bahlsen GmbH & Co., KG ("Bahlsen"), a German producer of cookies and other food products. (Op. 1–2; Certification of Barry Kozyra, Ex. A, Pl.s' Version of Contested Facts ¶ 2.) Under this agreement, Parmalat was obligated not only to distribute Bahlsen cookies, but also to promote them. (Pl.'s Facts ¶¶ 2, 3.) Parmalat and WFF did not memorialize this agreement in any formal way and thus did not discuss the contract's length or—more importantly—how the parties could terminate it. (Op. 2–3.) Nevertheless, the parties all agree that Parmalat and WFF had at least some contractual obligation.

The dispute arose when Parmalat repudiated and then terminated the contract. (Op. 4–6.) Without Bahlsen's permission, in December 2001, Parmalat contracted with Bahlsen's competitor, Great Brands of Europe, Inc. ("GBE"), to exclusively distribute only GBE biscuits. (Op. 4.) While WFF knew that Parmalat was distributing GBE products, WFF did not know that Parmalat had contracted with GBE to distribute only GBE products. (Op. 4–5.) WFF and Bahlsen claim that Parmalat subsequently curtailed its promotion and distribution of Bahlsen products and that WFF's and Bahlsen's profits declined as a result. (Pl.s' Facts ¶¶ 9, 10; Kozyra Certification, Ex. Q; Pl.s' Opp'n to Def.'s Mt. for Summ. J. 28–29.) WFF and Bahlsen further claim that during Parmalat's repudiation of its contract with WFF, Parmalat nonetheless assured WFF that it was performing the contract as promised. (Pl.s' Facts ¶ 11.) On September 9, 2002, Parmalat gave WFF notice that it would soon have to terminate their contract, and on October 3, 2002, Parmalat sent WFF a letter stating that Parmalat would formally cease to distribute Bahlsen products by October 20, 2002. (Op. 5.)

In response, WFF and Bahlsen sued Parmalat. (Op. 6.) Parmalat moved for summary judgment, and after this Court adjudicated that Motion, several claims remain. Accordingly, WFF now retains claims against Parmalat for breach of contract, fraudulent misrepresentation, and breach of the implied covenant of good faith and fair dealing. (Op. 1.) WFF and Bahlsen both retain claims against Parmalat for breach of fiduciary duty. (Op. 1.)

Parmalat now moves for summary judgment, seeking dismissal of these remaining claims. (Def.'s Br.) Parmalat claims that WFF's and Bahlsen's claims rest on the inadmissible testimony of two experts, John Roberts and Chris Campos. (Def.'s Br. 20–28.) Parmalat further argues that without this testimony, WFF and Bahlsen have not put forth sufficient evidence of their claims to survive summary judgment. (Def.'s Br. 20–40.)

## DISCUSSION

## I.    The Expert Testimony of John Roberts and Chris Campos

To support their claims, Plaintiffs will seek to introduce the expert testimony of John

Roberts and Chris Campos.  (Ex.s O, Q to Kozyra Certification; Ex. D to Holahan Certification.)  Roberts, an expert in the food distribution business, stated in a report that a party to a food distribution contract needs six months to prepare for the other party's termination of that contract and that standard food distribution contracts thus probably contain a six month notice-of-termination provision.  (Ex. D.)  Campos, a business expert, testified in a deposition that Parmalat's termination caused the Plaintiffs financial harm.  (Ex. Q.)  In forming this conclusion, Campos relied on WFF's financial statements, which showed profit losses following Parmalat's curtailment of its sales and promotion of Bahlsen products.  (Ex. Q.)

Parmalat claims in its Motion for Summary Judgment that Roberts's and Campos's testimonies are inadmissible and thus inappropriate for consideration on summary judgment.  (Def. Br. 20–28.)  Parmalat argues that Roberts and Campos are not experts and that they have insufficient evidentiary support for their conclusions.  (Def. Br. 23–28.)  Parmalat also argues that Campos's testimony fails to establish a causal link between Parmalat's conduct and Plaintiffs' losses.[1]  (Def. Br. 26.)  This Court disagrees for the reasons explained below.

For expert testimony to be considered in a motion for summary judgment, it must be admissible.  *See In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717, 732–33 (3d Cir. 1994).  The admissibility of expert testimony is governed mainly by Federal Rule of Evidence 702, which requires that the testimony be rendered by an expert, that it assist in the determination of a relevant issue, and that it is based on reliable evidence and methodology.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993).  More specifically, as established in *Daubert* and codified in Rule 702, expert testimony must have a reliable basis in the expert's knowledge and experience.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).  This standard is weighted toward admissibility.  *See Paoli*, 35 F.3d at 744–45.  Applying this standard, this Court finds that both Roberts and Campos present admissible expert testimony.

## A.    Both Roberts and Campos Are Experts

As noted above, Rule 702 requires that expert testimony be given only by an expert.  A witness may qualify as an expert if by virtue of his experience he possesses advanced knowledge.  FED. R. EVID. 702.  Such a witness may then testify as an expert to relevant, reliable information within his expertise.  *Paoli*, 35 F.3d at 741–42.  This is not a high bar; only a modest degree of expertise is required.  *See Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 598–99 (3d Cir. 1998).

Roberts is an expert in the food business.  He has served in management or executive roles in the National Association for the Specialty Food Trade, Inc., Romanoff Foods, International, Buitoni Foods, Inc., Hunt-Wesson Foods, and General Foods. (Ex. D.)  Furthermore, Roberts specifically stated in a report that he has experience with the termination of distribution contracts and the consequences thereof.  (Ex. O.)  This experience qualifies him as an expert to testify generally about distribution contracts and their termination.

---

[1]Parmalat further argues that Roberts's testimony does not establish causation either (Def. Br. 21), but Plaintiffs do not seek to use Roberts's testimony for this purpose.

Campos qualifies as a more general business expert. He is a CPA. (Ex. N to Holahan Certification.) He also has extensive experience preparing forensic reports for litigation. (Ex. N.) This certification and experience qualify him to testify as an expert about basic business accounting, such as sales reports.

Since Roberts and Campos are both experts, the remaining questions are whether their testimonies are the products of reliable methodology and evidence and whether they will assist the determination of relevant issues.

### B.    Roberts's and Campos's Testimonies Are Products of Reliable Methods and Evidence and Will Assist the Determination of Relevant Issues

As noted above, Rule 702 requires that expert testimony be the product of reliable methods and evidence and that it assist the determination of relevant issues. *See Daubert*, 509 at 589–95. This Court finds that Roberts's and Campos's testimonies satisfy these requirements.

Roberts stated in a report based on his experience working in many different food businesses that a party to a food distribution contract needs six months to prepare for the termination of the contract by the other party. (Ex. D.) This testimony appears reliably derived directly from Roberts's experience. Furthermore, as explained in later sections, the length of time a party to a food distribution contract needs to prepare for its termination is relevant to the length of any notice-of-termination requirement that this Court will read into WFF and Parmalat's informal distribution contract. Thus, Roberts's testimony is admissible.

Parmalat directs its objection to Roberts's testimony at merely one of his conclusions. Roberts concluded, based on the assumption that a party to a food distribution contract needs six months to prepare for its termination, that the standard food distribution contract would include a six month notice-of-termination requirement. (Ex. D.) Parmalat points out that Roberts admitted he has no direct experience with such terms and argues that Roberts thus lacks the expertise and foundation to offer such a conclusion.[2] (Def.'s Br. 23–24; Ex. O.)

While Parmalat is correct, its argument is irrelevant. It is true that Roberts lacks experience with the termination terms of standard food distribution contracts. And his observation that it takes a party to such a contract six months to prepare for termination only weakly supports his conclusion that the standard contract contains a six month notice-of-termination requirement. Nevertheless, this conclusion is not necessary to any relevant issue, and, as explained above, Roberts already has at least some admissible expert testimony to offer.

Campos's testimony is also the product of reliable methods and evidence and will assist the determination of relevant issues. Campos testified based on WFF's financial statements that

---

[2]Parmalat also argues that Roberts has no experience in the specialty biscuits industry (Def.'s Br. 23) but offers no reason why Roberts's experience in other specialty food industries is not relevant.

4

WFF suffered sales losses after Parmalat curtailed sales and promotion of Bahlsen products.  (Ex. Q.)  Campos concluded that Parmalat's actions caused WFF's losses.  (Ex. Q.)  WFF's financial statements were professionally prepared and thus appear reliable.  Furthermore, Campos's methodology for arriving at its conclusion—comparing WFF's sales before and after Parmalat's repudiation of their contract—is also at least somewhat reliable.  That is, the temporal coincidence of Parmalat's actions and WFF's losses combined with a plausible explanation suggests that the former caused the latter.  And causation is certainly a relevant issue in this litigation.  Campos's testimony is thus admissible.

Parmalat argues that Campos failed to consider other possible causes for WFF's losses, (Def.'s Br. 26–28) but this does not render his testimony inadmissible.  Undoubtedly, consideration of other causes for WFF's losses would more accurately reveal the connection between those losses and Parmalat's actions.  But an expert's failure to use the most reliable available methods does not alone render his testimony inadmissible.  *See Paoli*, 35 F.3d at 744–45.  Rather, the proponent of the expert testimony need only make a prima facie showing that the methodology is reliable.  *Id.* at 743.  Here, as explained above, Campos's testimony is reliable, as well as relevant, and it is thus admissible.

Given the admissibility of Roberts's and Campos's testimonies, this Court will now address Parmalat's Motion for Summary Judgment on the claims remaining against it.

## II.     Parmalat's Motion for Summary Judgment on the Remaining Claims

### A.     Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fᴇᴅ. R. Cɪᴠ. P. 56(c).  The burden of showing that no genuine issue of material fact exists rests initially upon the moving party.  *Celotex*, 477 U.S. at 325.  A litigant may discharge this burden by exposing the "absence of evidence to support the nonmoving party's case."  *Id.*  Thus to survive summary judgment, the nonmovant must demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.     Parmalat's Motion for Summary Judgment on WFF's Breach of Contract Claim Is DENIED

WFF asserts that Parmalat breached its distribution contract.  (Compl. ¶¶ 20–22.)  Specifically, WFF argues that Parmalat's notice of termination was insufficient and that Parmalat should have given WFF at least six months' notice.  (Pl.s' Br. 34–35.)

Parmalat seeks dismissal of WFF's breach of contract claim.  (Def.'s Br. 28–29.)

Parmalat argues that WFF is unable to establish that six months is the standard notice-of-termination requirement in food distribution contracts.  (Def.'s Br. 29.)  This is essentially the same argument that this Court rejected in Parmalat's previous motion for summary judgment, and the analysis and conclusion remain essentially unchanged.  (Op. 7–9.)  Nevertheless, in light of Parmalat's added challenge to relevant expert testimony, this Court will again address the merits of Parmalat's challenge to WFF's breach of contract claim.

WFF has provided sufficient evidence to support a jury determination that Parmalat breached their distribution contract.  Where a contract provides for successive performances but fails to specify a method by which the parties may terminate, such as this contract, the contract is terminable by either party—provided that the terminating party gives reasonable notice of the termination.[3]  N.J. STAT. ANN. § 12A:2-309 (West 2004).  What constitutes reasonable notice depends upon many circumstances, *cf. Barban v. David Kaufman & Sons Co.*, 117 A. 597, 598 (N.J. 1922), at least one of which is the amount of time necessary for the supplier to find new sources of distribution.  *See Jo-Ann, Inc. v. Alfin Fragrances, Inc.*, 731 F. Supp. 149, 160 (D.N.J. 1989).  Generally, the question of what constitutes reasonable notice is one for a jury.  *Cf. Barban*, 117 A. at 598.  Here, as explained above, WFF presents admissible expert testimony that a food supplier needs six months to find a new distributor.  This is sufficient evidence for a jury to find that six months is the appropriate reasonable notice requirement.  In the face of this evidence, Parmalat's counterargument, that WFF has presented no admissible evidence of the industry standard for notice-of-termination provisions, is weak.  WFF need not present all possible sources of evidence supporting its proposition that six months is a reasonable notice of termination.  The evidence it has provided is sufficient to submit the question to a jury.  Thus, WFF's breach of contract claim survives summary judgment.

### C.   Parmalat's Motion for Summary Judgment on Plaintiffs' Breach of Fiduciary Duty Claim Is DENIED

WFF and Bahlsen allege that Parmalat breached a fiduciary duty owed to them by secretly entering into an exclusive distribution agreement with a Bahlsen competitor, GBE.  (Compl. ¶¶ 23–26.)  Parmalat seeks dismissal of this claim, arguing that nothing in the record supports a finding that the parties had a fiduciary relationship.  (Def.'s Br. 30–32.)  This is the same argument Parmalat put forth in its previous motion for summary judgment.  (Op. 9.)  This Court denies Parmalat's request for summary judgment on this claim for the reasons set forth in its Opinion disposing of Parmalat's request in its prior motion.  (Op. 9–11.)

### D.   Parmalat's Motion for Summary Judgment on WFF's Fraudulent Misrepresentation and Omission Claim Is DENIED

WFF alleges Parmalat committed fraudulent misrepresentations and omissions.  (Op. 11.)  Specifically, WFF claims Parmalat assured WFF that it was performing the contract as promised while Parmalat actually curtailed its distribution and promotion of Bahlsen products.  (Op. 11.)

Parmalat seeks to dismiss this claim on summary judgment.  (Def.'s Br. 33–36.)

---

[3]It is undisputed that New Jersey substantive law governs this suit.  (Op. 6 n.4.)

Parmalat makes two arguments, both of which fail.

First, Parmalat argues that any statements it made to WFF were mere general business assurances, which Parmalat argues cannot constitute fraudulent misrepresentations or omissions. (Def.'s Br. 35–36.) This is precisely the argument Parmalat made in its previous motion for summary judgment. (Op. 11.) This Court rejects that argument for the reasons set forth in its Opinion disposing of Parmalat's first motion. (Op. 11–14.)

Second, Parmalat argues that WFF has failed to put forth evidence that any of its representations caused WFF financial harm, (Def. Br. 33–35) but this argument is also without merit. The temporal coincidence of wrongful conduct and harm coupled with a plausible theory of causation may satisfy a plaintiff's burden on summary judgment of proving causation. *Cf. Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). Here, WFF has admissible evidence, Campos's testimony, that its sales dropped when Parmalat failed to inform WFF that it curtailed promotion and distribution of Bahlsen products. Such a drop in sales is precisely the harm one would expect from Parmalat's secret curtailment, and Parmalat offers no alternative explanation for it. While Parmalat is correct that Campos admitted he could not more directly establish causation (Ex. Q; Def.'s Br. 33-35) and while this Court appreciates the importance of considering confounding variables, the evidence WFF did put forth satisfies its minimal burden on summary judgment.

### E.   Parmalat's Motion for Summary Judgment on WFF's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Is DENIED

WFF claims Parmalat breached the implied covenant of good faith and fair dealing implicit in their contract by failing to inform WFF of its exclusive contract with GBE. (Op. 17.) Parmalat seeks summary judgment on this claim. (Def.'s Br. 36–39.) Parmalat argues that such a claim requires evidence of malice, which WFF does not allege. (Def.'s Br. 36–38.)

This Court has previously addressed the summary judgment merits of WFF's claim that Parmalat breached the implied covenant of good faith and fair dealing. (Op. 17–20.) In its Opinion adjudicating Parmalat's first motion for summary judgment, this Court held that WFF's claim survived summary judgment, and this Court now reaffirms that holding for the reasons set forth in the previous opinion. (Op. 17–20.) Accordingly, this Court addresses only Parmalat's new argument, that a breach of the implied covenant of good faith requires a showing of malice.

While Parmalat's new argument has purchase, it ultimately fails. Parmalat is correct to point out caselaw supporting the malice requirement. (Def.'s Br. 36.) In *Wilson v. Amereda Hess Corp.*, 773 A.2d 1121 (N.J. 2001), the New Jersey Supreme Court held that a successful claim for breach of the implied covenant of good faith requires a showing of bad faith. Such bad faith usually exists only where the defendant acts with the objective of preventing the plaintiff from receiving its reasonably expected fruits under the contract. *Id.* at 1129–30. Parmalat is also correct to point out that WFF does not allege that Parmalat desired to harm WFF, merely that Parmalat was indifferent as to WFF's harm. (Def.'s Br. 36–37.) Under *Amereda Hess*, it would

appear that WFF's allegations that Parmalat breached the implied covenant of good faith are insufficient to survive summary judgment.

However, another New Jersey case, albeit an older one, reaches the opposite conclusion in a case on point.  In *Bak-A-Lum Corp. of Am. v. ALCOA Bldg. Prods., Inc.*, 351 A.2d 349, 350 (N.J. 1976), the New Jersey Supreme Court addressed a situation arising when ALCOA terminated its exclusive distribution contract with Bak-A-Lum without giving Bak-A-Lum sufficient notice.  Bak-A-Lum sued ALCOA for breach of the implied covenant of good faith and fair dealing.  *Id.* at 352.  The trial court found ALCOA liable, and the Supreme Court affirmed, holding that "defendant's selfish withholding from plaintiff of its intention seriously to impair its distributorship" constituted a breach of the implied covenant of good faith and fair dealing.  *Id.* at 352.  *Bak-A-Lum* is on point; WFF accuses Parmalat of selfishly witholding its intention to terminate its distribution agreement, which, according to *Bak-A-Lum* is sufficient to sustain a claim for breach of the implied covenant.  Because *Bak-A-Lum* is on point and has not been expressly overruled, this Court will follow it rather than *Amereda Hess*, which is newer but more general in its applicability.  Accordingly, this Court denies Parmalat's Motion for Summary Judgment on WFF's claim for breach of the implied covenant of good faith and fair dealing.

## III.    Other Issues

After disposing of Parmalat's Motion on its merits, this Court turns to a final issue, the Motion's frivolity.  As described above, Parmalat's Motion is almost completely devoid of merit.  Parmalat has thrown forth numerous general arguments without framing them in the context of appropriate legal standards, often failing to cite clearly applicable law.  More disturbing, however, is that Parmalat has reasserted arguments from its first motion for summary judgment that this Court has already rejected.  This redundancy has created substantial unnecessary work for this Court and for both parties.  In light of the fact that courts' and litigants' resources are limited, this Court hopes that in the future, Parmalat will litigate more efficiently.

## CONCLUSION

For the foregoing reasons, Parmalat's Motion is **DENIED**.  An appropriate Order accompanies this Letter Opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

8